[No. 18844. Department One. February 19, 1925.]

FIDELITY & DEPOSIT COMPANY OF MARYLAND, *Respondent*, v. J. D. BASSETT *et al., Appellants.*[1]

INDEMNITY (5)—PRINCIPAL AND SURETY (13-1) — LIABILITY OF SURETY—DEPOSITARY BOND—BREACH OF CONDITIONS BY PRINCIPAL. Immediately upon the declared insolvency of a bank, there is a breach of an indemnity bond which guaranteed county deposits, pursuant to Rem. Comp. Stat., § 5563, and was conditioned to keep the deposits at all times subject to check, and to make prompt payment thereof.

SAME (13)—PRINCIPAL AND SURETY (55)—LIABILITY OF SURETY— ACTIONS—EVIDENCE. In an action on an indemnity bond in the sum of $5,000, guaranteeing county deposits in a bank, it is competent for an assistant cashier to testify from his personal knowledge that the county had over $50,000 on deposit at the time the bank closed its doors.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered November 2, 1923, upon findings in favor of the plaintiff, in an

[1] Reported in 233 Pac. 325.

action on an indemnity bond, tried to the court. Affirmed.

*Powell & Herman*, for appellants.

*Danson, Williams, Danson & Lowe*, for respondent.

PARKER, J.—The plaintiff, a surety company, seeks recovery from the defendants upon an indemnity bond executed by them indemnifying the plaintiff against loss it might suffer by reason of it executing a depositary bond as surety with the Grant County Bank as principal, securing deposits in that bank of the funds belonging to Grant county deposited therein by the treasurer of that county. A trial upon the merits in the superior court for Spokane county, sitting without a jury, resulted in findings and judgment awarding to plaintiff recovery as prayed for, from which the defendants have appealed to this court.

Deposits being made and about to be made by the treasurer of Grant county of funds belonging to that county in the Grant County Bank, in pursuance of the provisions of § 5563, Rem. Comp. Stat. [P. C. § 1836], the bank, as principal, and the plaintiff, as surety, executed a bond in the sum of $5,000 to secure such deposits, conditioned, among other things, that the bank "shall well and truly keep all such sums of money so deposited or to be deposited, and the interest thereon, subject at all times to the check and order of said treasurer, and shall make prompt and faithful payment thereof on checks drawn by such treasurer to the extent of all moneys upon deposit by such treasurer." At the time of the execution of this depositary bond, and as an inducement for the execution thereof by the plaintiff as surety, the defendants executed the indemnity bond here sued upon, which, after reciting the execution of the depositary bond by the plaintiff as surety, recites the defendants' promise of indemnity as follows:

"Do hereby covenant, promise and agree with the said Fidelity and Deposit Company of Maryland to indemnify it, and keep it indemnified, from and against any and all loss, costs, charges, counsel fees and expense of whatever nature or kind, which it, the said Fidelity and Deposit Company of Maryland, might suffer, be put to or incur, for, by reason of, or in consequence of consenting to, and executing, the said depositary bond, or any continuation or continuations of same on behalf of the Grant County Bank."

While the depositary bond and indemnity bond here in question were in full force and effect, on October 10, 1922, the bank was closed and ceased to do business as a going concern because of its then insolvency; its assets and affairs then passing into the hands of the state bank examiner for liquidation. On December 13, 1922, the plaintiff, having become satisfied that, at the time of the closing of the bank, the county treasurer had on deposit of the county's money in the bank over $50,000, no part of which had been paid, on demand settled with the county treasurer for its liability as surety upon the depositary bond by paying to the county treasurer the full amount thereof. This was done without suit being instituted or judgment rendered against the plaintiff. Thereafter this action was commenced by the plaintiff seeking reimbursement and recovery from the defendants upon their indemnity bond.

It seems to be contended in behalf of the defendants that the evidence introduced upon the trial fails to show a legal liability on the part of the plaintiff as surety to pay the amount of the depositary bond, in that it is not shown but that there will ultimately be no loss to the county. This, we think, is effectually answered by the conditions of the depositary bond above quoted. The moment the bank closed as a going concern, that condition of the depositary bond was vio-

lated, and the plaintiff, as surety, immediately became liable because the bank could no longer make payment of checks drawn by the treasurer against the deposit in the usual course of business. This situation manifestly entitled the treasurer to immediately make demand upon the plaintiff, as surety, upon the depositary bond to the extent of the amount of such bond, assuming for the present that there was more than that amount of the county's money on deposit in the bank.

It is contended in behalf of the defendants that there is no competent proof of any amount of the county's money being on deposit in the bank at the time it was closed. We shall assume, as counsel argues, that the record before us does not show any exact specified amount of the county's money being on deposit in the bank at the time it closed, but we think that the evidence does plainly show, sufficient to support the judgment, that there was more than $50,000 of the county's money on deposit in the bank when it closed its doors. The bank's assistant cashier, who was also its teller and bookkeeper, testified:

"Q. Was the treasurer of Grant county a depositor with that bank? A. Yes, sir. Q. Do you know about how much Grant county's deposit was when the bank closed its doors? A. Not unless I refer to the records. Q. Do you know approximately how much? A. Something over $50,000."

This testimony was objected to as being incompetent, the argument being that the fact so testified to by the witness must be shown by the bank's records. It will at once be noticed that the witness was testifying from personal knowledge; that is, she personally knew that, at the time in question, the county treasurer had of the county's money on deposit in the bank "something over $50,000." This, we think, was competent proof of the fact that the bank had on deposit of the county's

money many times the amount of the depositary bond, being the amount for which the defendants were liable. Thus, the exact amount of the county's deposit in the bank became of no moment. There was no evidence contradicting this testimony. Observations made in our decisions in *Hull v. Seattle, Renton etc. R. Co.*, 60 Wash. 162, 110 Pac. 804, and *Rensselaer Valve Co. v. National Bank of Commerce of Seattle*, 129 Wash. 253, 224 Pac. 673, support our conclusion that the testimony of this witness was admissible, competent and sufficient to support the judgment in the respect in which it is here challenged.

The judgment is affirmed.

TOLMAN, C. J., BRIDGES, and MAIN, JJ., concur.