**KING EDWARD EMPLOYEES FEDERAL CREDIT UNION v. TRAVELERS INDEMNITY CO.**

No. 14324.

United States Court of Appeals
Fifth Circuit.

Aug. 31, 1953.

Rehearing Denied Oct. 23, 1953.

Taylor Jones and Rogers, Towers & Bailey, Jacksonville, Fla., for appellant.

Francis P. Conroy and Marks, Gray, Yates & Conroy, Jacksonville, Fla., for appellee.

Before BORAH, RUSSELL and STRUM, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from an order and judgment of the district court dismissing plaintiff's suit for failure to state a claim upon which relief can be granted.

The well-pleaded material allegations of the complaint which we must treat as admitted are these: Plaintiff is a federal credit union, a cooperative association organized under the provisions of Chap. 14, Title 12, U.S.C.A., as defined in Section 1752 of said Title, with its principal office and place of business in Jacksonville, Florida. During the period beginning and existing through and beyond May 15, 1951, plaintiff was protected by a credit union blanket indemnity bond issued by the defendant, The Travelers Indemnity Company. By the terms of said bond and the riders attached thereto, defendant agreed to indemnify and hold harmless the plaintiff, to an amount not exceeding $20,000.00 from and against the direct loss of any property:

"(a). Through any dishonest act, wherever committed, of any of the Employees, whether acting alone or in collusion with others or, in case faithful performance of duty coverage on the Employees or any of them is required by law under which the insured is incorporated, or by the rules and regulations of any officer, board or commission having supervision over Credit Unions, then through the failure of such Employee or Employees to perform faithfully their duties."

The complaint alleges that faithful performance of duties coverage on the treasurer of the credit union was required by the law [1] under which it was incorporated; that J. F. Lucas was treasurer of the credit union and was entrusted with the custody of all of its funds and assets and it therefore became his duty to diligently care for, protect, safeguard, preserve and account for all the funds and assets of plaintiff. However, during the period February 1, 1950, through May 15, 1951, Lucas failed to faithfully perform his duties by carelessly and negligently using or permitting the use of the funds of plaintiff in honoring and cashing 46 drafts issued by John H. Swisher & Son, Inc., payable to the order of Machine Engineers bearing the forged or unauthorized indorsements of the payee and without even requiring the person presenting 38 of said drafts to indorse them; and by then indorsing or permitting the indorsement of such drafts in the name of the plaintiff in blank thereby guaranteeing the validity and genuineness of all prior indorsements and warranting that plaintiff had good title to the drafts. These drafts were then deposited by plaintiff to its account in the Springfield Atlantic Bank, Jacksonville, Florida, which bank credited plaintiff's account with the amount of each draft and then forwarded the drafts to the Atlantic National Bank, Jacksonville, Florida, which in turn, presented said drafts to John H. Swisher & Son, Inc., which paid them. Upon discovery of the fact that the indorsements of the payee, Machine Engineers, were forged and unauthorized, the Springfield Atlantic Bank

[1]. 12 U.S.C.A. § 1761(b).

demanded payment of plaintiff of the total amount of the drafts and blocked the account of plaintiff in the bank on September 25, 1951, to the extent of $19,782.75, the total amount of the drafts. Plaintiff, having indorsed the drafts and having received payment by the bank was allegedly under a legal obligation to refund the amount of the drafts which the bank had paid and in recognition of such legal obligation and in order to unblock its account, paid the bank the sum of $19,782.75. Notice of loss was duly given by plaintiff to defendant, proof of loss was furnished, and plaintiff performed all conditions of the contract required of it but defendant failed and refused to pay the amount of the loss as contracted.

In a second count, plaintiff realleged all of the foregoing facts except that instead of referring only to J. F. Lucas, treasurer, the allegations refer to J. F. Lucas, treasurer, and Audrey DuBard, assistant treasurer, as having done or permitted the doing of the negligent and careless acts, and with this further exception that plaintiff alleged that faithful performance of duty coverage on the treasurer and assistant treasurer of plaintiff was required by the rules and regulations of the officers, boards and commissions having supervision of it.

The prayer of the complaint was for a judgment in the sum of $25,000.00 together with interest and costs and attorneys' fees reasonably expended or incurred in and about the prosecution of the suit.

Cases are generally to be tried on their proofs rather than the pleadings and there was no justification for granting the motion to dismiss the complaint for failure to state a claim unless the averments in the pleading attacked disclosed with certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim. Leimer v. State Mutual Benefit Assur. Co., 8 Cir., 108 F.2d 302; Carroll v. Morrison Hotel Corp., 7 Cir., 149 F.2d 404; Ware v. Travelers Ins. Co., 9 Cir., 150 F.2d 463; Dollar v. Land, 81 U.S.App.D.C. 28, 154 F.2d 307; Frederick Hart & Co., Inc., v. Recordograph Corp., 3 Cir., 169 F.2d 580. The test is whether the complaint, construed in the light most favorable to the plaintiff and with every intendment regarded in his favor, is sufficient to constitute a valid claim. Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865. Insisting that the District Court did not err in dismissing the complaint appellee argues extensively but not convincingly that for reasons presently appearing the facts alleged in the complaint fail to show that plaintiff is entitled to relief from defendant. The first contention urged upon us is that the act of plaintiff in cashing the drafts was an ultra vires act, unauthorized by statute or charter, of which both banks and Swisher had either actual or constructive knowledge. Hence, plaintiff's subsequent repayment to the Springfield bank was voluntary because plaintiff's indorsements were ultra vires and therefore could not have been enforced by the Springfield bank. In support of this contention appellee cites a number of cases to the effect that corporations other than credit unions are not authorized to lend their credit or to pledge assets to secure deposits or to engage in the business of discounting bank papers. These authorities have no pertinency here for the simple reason that there is no language to be found in the complaint which shows that plaintiff ever at any time pledged its assets as security or lent its credit for the benefit of another or engaged in discount business. There is thus no factual basis for the argument appellee makes and we think the argument has no basis in law. The Federal Credit Union Act vested plaintiff with certain enumerated powers including the power "to make contracts" and "to make deposits in national banks and in State banks" and by clear implication plaintiff possessed the incidental power to indorse and deposit the checks and drafts which it acquired. 12 U.S.C.A. § 1757. But assuming arguendo that the acts of plaintiff in cashing the drafts were ultra vires, there is nothing in the complaint to indicate that the banks knew or had reason to know the nature of the transaction by which plaintiff acquired the drafts. For all they knew, the drafts might have been payment on shares from credit union members. 12 U.S.C.A. § 1757(6).

729

Next it is argued that the Springfield bank and the Atlantic National Bank are shown by the record to have been only agents for presenting the drafts to Swisher and hence did not guarantee genuineness of indorsements. Here again appellee reads language into the complaint which simply is not there. There is no language to be found in the complaint that would indicate with any reasonable certainty that the two banks were only acting as agents for collection of the drafts. Indeed a fair reading of the complaint would seem to justify a construction that the converse is true and the claim must be viewed in the light most favorable to the plaintiff. Frederick Hart & Co., Inc. v. Recordograph Corporation, supra.

The appellee further contends that the plaintiff did not give written notice of loss under the bond as soon as possible after it learned of the loss. This contention is wholly without merit. The complaint specifically alleges that notice of loss was duly given by plaintiff to defendant, so we must assume on the motion to dismiss that notice was given as required by the bond.

Finally, it is argued that plaintiff's payment to the Springfield bank was voluntary, without defendant's consent, contrary to the provisions of the bond and that by so waiving all of its defenses, plaintiff released defendant. Again an argument is made by twisting the true meaning of the language of the complaint and by drawing unwarranted inferences from the facts alleged. The complaint clearly alleges a claim by the Springfield bank against plaintiff on account of the deposit by plaintiff of the drafts with their forged or unauthorized indorsements, and the payment by plaintiff, of this claim. In the light of what we have said with respect to notice, it must be considered on the motion to dismiss, that defendant was given notice of

this claim and "failed and refused" to pay the amount of the loss.

The indorsement of the drafts by plaintiff transferred no title thereto to the Springfield bank in view of the forged or unauthorized indorsements of the payees. F.S.A. § 674.25. There was therefore a legal obligation on the part of plaintiff to repay to the bank the moneys plaintiff had received from it on account of said drafts. Leather Manufacturers' Nat. Bank v. Merchants' Bank, 128 U.S. 26, 9 S.Ct. 3, 32 L. Ed. 342; Borserine v. Maryland Casualty Co., 8 Cir., 112 F.2d 409. In the absence of contrary instructions from defendant, and considering defendant's alleged refusal to pay the loss, it was not necessary for plaintiff to wait until suit had been filed against it by the Springfield bank, before paying the claim of the latter. Fidelity & Deposit Co. of Maryland v. Bassett, 133 Wash. 77, 233 P. 325; Luton Mining Co. v. Louisville & N. R. Co., 276 Ky. 321, 123 S.W. 2d 1055, 1060; Walton v. Cherokee Colliery Co., 70 W.Va. 48, 73 S.E. 63; Glen Falls Ind. Co. v. Carobine, City Ct., 36 N.Y.S.2d 253; 42 C.J.S., Indemnity, § 14c(2).

The complaint alleged a breach of the bond by the negligent disbursement of plaintiff's funds by its employees upon the forged indorsements of the payees of the drafts; that plaintiff sustained a loss resulting from this breach and that this loss was not excluded from the coverage of the bond. We cannot say that the complaint, considered in the light of its allegations and the evidence that might be introduced thereunder, would entitle plaintiff to no relief under any state of facts which could be proved in support of the claim.

The judgment of the District Court is reversed and the cause is remanded to that court with directions to overrule the motion to dismiss and for further proceedings not inconsistent herewith.