Samuel **FEINBERG** and Ann Feinberg, Appellants,

v.

William E. **LEACH**, d/b/a Dickey Stables, Appellee.

No. 16286.

United States Court of Appeals Fifth Circuit.

March 27, 1957.

John P. Booth, Miami, Fla., for appellant.

Curtiss B. Hamilton, Robert C. Lane, Miami, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from an order dismissing, with prejudice, appellants' "Second Amended Complaint," in which they pleaded substantially as follows:

During the spring of 1952 the appellant, Samuel Feinberg, was the victim of two heart attacks which confined him to his bed and also of cataracts on both eyes which prevented him from reading. In that condition he became very much concerned about the disposition of three registered thoroughbred brood mares that he owned jointly with his wife, appellant Ann Feinberg, and consequently entered into negotiations for their sale to the appellee, Leach, who was then the owner of the Dickey Stables which were known by appellants to provide excellent care for horses. On May 14, 1952, Leach visited Samuel Feinberg with a written agreement drawn by himself, a copy of which is annexed to the complaint, which provided in substance as follows: appellants would sell and transfer their mares to Leach immediately, in consideration for which Leach

promised to deliver to them the third foal of each mare by a stallion owned and/or controlled by Leach, on the first day of January following the date of the foaling; Leach assumed no responsibility for the death, destruction, or disability of any of the animals before his part of the contract was fulfilled.[1] Leach read this agreement to Samuel Feinberg who then stated that he was not in a physical condition to express himself adequately but that he wished to keep the document overnight and to receive further clarification of certain parts of it; Leach, however, stated that since the period for breeding was fast expiring the contract would have to be signed immediately and that with reference to the questioned provisions Leach promised that he himself would personally care for the mares (though the written agreement did not provide so), that nothing would be done without Feinberg's consent, and that he personally would assume responsibility for the death, disability, or destruction of the animals (though the agreement expressly provided otherwise). Thereupon Samuel Feinberg executed the agreement and caused his wife to do so, though "at the time of executing said agreement, said Samuel Feinberg was not in physical condition to comprehend and understand the nature and implications of said agreement and relied upon the statements of Leach as to the meaning of the terms of said agreement as hereinabove set forth." Until January 1956 Leach lived up to the terms of the agreement, as had been "construed" by him, personally caring for the horses and giving notice of the dropping of two of the "third" foals. However, at that time Leach sold the Dickey Stables to a syndicate without notice to or the consent of the appellants, withdrew from the personal care and management of the horses, and when the last foal promised to the appellants was dropped he did not notify them as had been his custom.

It was further alleged that when the second "third" foal was a week old Leach purchased the animal from the Feinbergs for $25,000, acting through a dummy, in violation of his "fiduciary relationship" to appellants. Altogether appellants had $50,000 invested in the three mares at the time of the sale, for which up to the time of the complaint they had received only one foal plus $25,000 for another (plus a third one expected, which, however, would not have received appellee's valuable care), while they understood that Leach had profited to the extent of nearly $500,000. Leach thus had taken advantage of Samuel Feinberg's physical condition and the alleged necessity of speed to secure the execution of a contract so inequitable as to shock the conscience of the court.

Plaintiffs therefore prayed for rescission of the contract, whereby the mares or their subsequent sales price would be returned to appellants and Leach would be compensated for his expenses, or, in the alternative, that the written agreement be reformed to conform to the above oral understanding and that appellants recover damages for the breach of said agreement as reformed.

This is the third complaint that has been filed by appellants in this case, each premised on roughly the above facts but claiming different relief based on a different theory of recovery. The first two complaints were dismissed without

1. The terms of the contract relevant to this action read as follows:

"3. As consideration to Party of the Second Part for the animals, Party of the First Part is to give to Party of the Second Part the third foal produced by each of the three animals after the date of this agreement. Possession of the foals is to be taken by the Party of the Second Part on January first following the date they are foaled unless otherwise mutually agreed. The foals are to be a product of the animals referred to herein and a stallion owned and/or controlled by the Party of the First Part.

"4. Party of the First Part assumes no responsibility for the death, destruction or disability of the animals from any cause whatsoever and in the event of their death, destruction or disability prior to their production of a third foal the obligation of Party of the First Part to deliver a foal to Party of the Second Part ceases and becomes null and void."

prejudice and with leave to amend. With his motion to dismiss the original complaint, appellee submitted an affidavit in which he stated that he had not sold or offered for sale the third mare (whose third foal had not yet been dropped), that he had never personally handled racehorses but had always done so through competent employees, that he had made arrangements with the purchasers of the stables, who are responsible and reliable business men, to care for the mare and its expected foal at his expense and with his employees until it was delivered to appellants, and that he had never made any agreement with appellants to care for the mares or their foals at any particular farm. In his argument before this Court appellee's attorney asserted that this affidavit had been considered by the district court in dismissing the final complaint with prejudice, though the order itself does not reflect this; appellants' attorney, though notified of the pending motion to dismiss, did not appear for its disposition.

At the time of the argument of this appeal, appellee filed a suggestion of mootness with this Court, on the ground that with the receipted delivery of the last foal to the appellants on December 31, 1956, the contract had been fully performed.

■ Considering the issue of mootness first, we hold that this appeal should not be dismissed, since appellants do not attempt to assert a cause of action on the written contract whose terms have now been fully performed, but rather they would have that contract rescinded, or reformed and enforced in its altered state.

■ However, we are unable to agree with appellants that their complaint, considered with every intendment regarded in their favor, states a "claim showing that the pleader is entitled to relief," as required by Rule 8(a) (2), Fed.Rules Civ.Proc. 28 U.S.C.A. (and also required to resist a motion to dismiss under Rule 12(b) (6)), even if the pleadings are construed so "as to do substantial justice" as is enjoined on the courts by Rule 8(f). In substance this appears to be no more than a transparent attempt to evade the requirements of the parole evidence rule prohibiting the variation of the unambiguous terms of a written contract by evidence of a contemporaneous oral understanding, even if such an attempt is made under the guise of an equitable action to rescind or reform the written agreement. See 20 Am.Jur., Evidence §§ 1099, 1104. The fact that appellee's acts for some two years subsequent to the execution of the written contract were not inconsistent with the alleged additional oral understanding (or with the written terms either) cannot aid appellants' case.

■ Rescission or reformation here cannot be based on fraud for there is no claim that Samuel Feinberg was misled as to the actual words and terms of the agreement he executed, even though he himself could not read them, or even that Leach misled him as to his existing intentions at the time of the agreement or as to the actual need for speed in closing the transaction. See 5 Fla.Jur., Cancellation, Reformation, and Rescission of Instruments, § 23, and 45 Am. Jur., Reformation of Instruments, § 50.

■ Nor can appellants base a claim for rescission on the assertion that Feinberg was not in a physical condition to understand the implications of the agreement at the time of execution for mere incapacity of a party is no reason for cancelling a written agreement whose terms that party correctly heard and evidently understood (as indicated by the allegations of appellant's concern about some of the provisions and his decision to rely on the additional oral assurances of appellee that went considerably beyond the written terms) just because the incapacitated party relied on statements made by the other party interpreting the "meaning of the terms" of the agreement. Here no mere interpretation can be thought to bring the written agreement into conformity with the terms of the alleged oral one—particularly where Leach allegedly assumed

personal responsibility for the animals in direct contravention of the clear provisions of paragraph 4 of the contract —and it is clear that Feinberg alleges only that he chose to rely on Leach's oral assurances in addition to the provisions of the contract. Florida law does not permit the rescission of a contract freely entered into unless the incapacity was such that one party did not understand the nature of the transaction. See Douglas v. Ogle, 80 Fla. 42, 85 So. 243; 7 Fla.Jur., Contracts, § 12. Though it is frequently stated that great imbalance of consideration will be considered along with allegations of fraud, deceit, or duress to lend additional weight to a claim for rescission, the mere allegation that defendant profited far more from the contract than did the plaintiff is not sufficient where, as here, the proposed barter of three carefully bred foals for three mares does not appear grossly unreasonable on its face, and especially where plaintiffs do not even complain of this feature of the contract or assert that they were overreached in the exchange.

We must also take into account that nowhere in the complaint is it suggested that the coplaintiff and cosigner of the agreement, Samuel's wife, Ann Feinberg, was in any way incapacitated or incapable of understanding the nature of the agreement.

▬ No relief can be based on, and actually no reference is made in the prayer to, Leach's alleged purchase of one of the foals from appellants by means of a dummy. Contrary to appellants' conclusion we see no fiduciary relationship between Leach and appellants based on any construction of the contract either as written or as "reformed" and Leach's only duty was not to deceive appellants as to the *value of the foal* either by direct misstatements or by omitting

pertinent information, a duty which he is not alleged to have violated.

▬ Appellants do not especially urge that there was error in the dismissal "with prejudice," urging, as they do, that there should have been no dismissal at all. Appellee asserts that in view of his submission of an affidavit relevant to the first complaint the consideration of this material in conjunction with his motion to dismiss the third complaint converted the order of dismissal into a summary judgment by the provisions of Rule 12(b)[2]; appellants object to the consideration of this affidavit since allegedly no notice was given that this or any other affidavit would be considered with the motion to dismiss. The question therefore is whether appellants were given "reasonable opportunity to present all material * * * pertinent to" a motion for summary judgment. Here the record fails to indicate at all whether or not the district court actually did consider the previously submitted affidavit and whether appellants were given an opportunity to file counter affidavits. Therefore, and also in view of the fact that the district court did not denominate his dismissal as being a summary judgment, we will not give it such a construction either.

▬ The district court, however, did not abuse its discretion in dismissing this complaint with prejudice, since it appears that no mere amendment could cure its defect and have it state a claim upon which relief could be granted. This appears particularly by considering that this is the third in a series of complaints, in which appellants have twice before unsuccessfully attempted to base various claims for relief on substantially the same facts as were pleaded here.

▬ In view of this last consideration we must also deny appellants' prayer

2. "* * * If, on a motion * * * to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

that under our Rule 23, subd. 1 [3] the cost of printing in the record the text of and the proceedings had in respect to the first two complaints should be imposed on the appellee, who had insisted that they be included; here these served to indicate the unlikelihood that appellants would be able to amend their complaint into a form that could successfully resist a motion to dismiss for failure to state a claim.

The order of the district court is affirmed and appellants' prayer to charge appellee with part of the expense of printing the record is denied.

3. " * * * If on hearing the case it appears that either party has requested unnecessary parts of the record to be print-ed, the cost thereof may be imposed by the court upon such party or his counsel." 28 U.S.C.A.