**GENERAL GUARANTY INSURANCE COMPANY, Appellant,**

v.

**James D. PARKERSON, Appellee.**

**No. 23377.**

United States Court of Appeals
Fifth Circuit.

Dec. 20, 1966.

Marian Mayer Berkett, of Deutsch, Kerrigan & Stiles, New Orleans, La., for appellant.

J. J. Davidson, Jr., of Davidson, Meaux, Onebane & Donohoe, Lafayette, La., for appellee.

Before JONES, WISDOM and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

The General Guaranty Insurance Company, plaintiff-appellant, is a Florida corporation. General Guaranty had a written agreement, dated January 22, 1962, with the Parkerson Insurance Corporation (not a party here), by the terms of which the Parkerson Insurance Corporation was the general agent for General Guaranty's insurance business in the State of Louisiana. James D. Parkerson, the defendant-appellee, was the major stockholder of the Parkerson Insurance Corporation, and he (along with other individuals not parties to this action) had personally guaranteed the obligations which might arise under the general agency agreement.

Then, in August 1962, Parkerson Insurance Corporation sold part of its business (but not including the General Guaranty contract) to two other insurance agencies, effective January 1, 1963. By the terms of the assignment James D. Parkerson individually agreed not to compete with the purchasers in Louisiana.

The contract of sale to the two insurance agencies left Parkerson with the General Guaranty agency contract, which he was obligated to dispose of by January 1, 1963, or be in violation of the covenants not to compete. Parkerson, desiring to assign his contract with General Guaranty to the New Orleans General Agency (N.O.G.A.), approached General Guaranty and requested permission for the Parkerson Insurance Corporation to consummate such assignment. General Guaranty agreed, and on October 17, the assignment was executed, to be effective on January 1, 1963. The obligations of N.O.G.A. were guaranteed personally by its stockholders (none of whom is a party here), and Parkerson was released from his guaranty by the following language:

"General Guaranty Insurance Company further agrees that the Guaranty and Indemnity Agreement executed by James D. Parkerson [and others], * * * dated May 15, 1962, * * *

will cease and be of no further force or effect with respect to the transaction of all business and the payment of all accounts accruing on and after January 1, 1963, and same shall continue in effect only insofar as business and accounts transacted and accrued through December 31, 1962, are concerned, and that said guaranty shall cease and no longer be effective for any purposes whatsoever upon the receipt by General Guaranty Insurance Company of the payment of all monies due it under said Agreement through December 31, 1962."

The New Orleans General Agency, according to plaintiff, then proceeded to mismanage its affairs: "risks were not investigated or supervised, proper underwriting practices were not followed, premiums were not collected and if collected were not held in trust for plaintiff, plaintiff was not promptly notified of the issuance of policies as they were written or of claims as they arose, accounting records were not properly kept, return of premiums were not made when requested, request for cancellation of policies were ignored and payment of balances due plaintiff was not made." General Guaranty now alleges that N.O.G.A. or on its default, the guarantors of the Agency's obligations, are liable in a sum not less than $460,148.33.

General Guaranty seeks here to hold James D. Parkerson personally liable for such sum, basing its claim on certain oral representations and promises made by Parkerson during the negotiations (which for the purposes of this action we take as true).

Parkerson moved to dismiss the original complaint, and dismissal was granted with leave to General Guaranty to amend, which it did. The trial court denied a motion to strike the amended complaint but did dismiss the cause.

■ We take the pleadings together with the contracts, assignment, and release which were attached to it, (F.R. Civ.P. 10(c)), and treat the motion to dismiss for failure to state a claim as a motion for summary judgment, as permitted by Rule 12(c), F.R.Civ.P. See, e. g., Fowler v. Southern Bell Telephone & Telegraph Co., 5 Cir.1965, 343 F.2d 150; Smoot v. State Farm Mutual Automobile Insurance Co., 5 Cir. 1962, 299 F. 2d 525. We affirm.

### I.

■ The original complaint set out only an oral promise to guarantee the debts of another. Paragraph IX reads:

"JAMES D. PARKERSON represented to plaintiff that he was personally involved with the new corporation, and he personally assured plaintiff that he, Parkerson, would be responsible for the performance of the general agency agreement and for the financial commitments of New Orleans General Agency to plaintiff."

The Louisiana Statute of Frauds is clearly a sound affirmative defense here. "Parol evidence shall not be received * * * (3) To prove any promise to pay the debt of a third person." 8 L.S.A. Civil Code Art. 2278.

### II.

■ The amended complaint seeks first to avoid the defense of the Statute of Frauds by claiming that Parkerson was "primarily liable" for N.O.G.A.'s "performance" of the general agency agreement. We are at a loss, however, to understand what being "primarily liable" for the "performance" of N.O.G.A. means, unless it be that N.O.G.A. was to operate its business, during the normal course of which certain sums would become due to General Guaranty, and that if those sums were not paid, Parkerson would pay them. In essence, this means that Parkerson was to be personally responsible for the performance of the acts of another, without himself being obliged to perform those acts. This is the mark of guaranty, no matter what twistification of language is used to describe it. Parol evidence of such a guaranty therefore is barred by Article 2278(3) of the Civil Code. See Brown & Root, Inc. v. Gifford-Hill & Co., 5 Cir. 1963, 319 F.2d

65, and the Louisiana cases there cited and discussed.

### III.

■■ Perhaps because of this difficulty, the amended complaint also has the following allegations in Paragraph IX:

"As compensation to induce plaintiff to approve the aforesaid assignment, which was for the personal benefit of Parkerson and possibly others, James D. Parkerson individually agreed to be personally and primarily liable (as distinguished from any collateral liability) for the performance of the general agency agreement, explaining that he could not formally join New Orleans General Agency in executing the agreement in writing because of his agreement not to compete with Gulf Insurance Company and Trinity Insurance Company."

This paragraph seeks to avoid the Statute of Frauds by the exception succinctly stated in Restatement, Contracts § 189 (1) (1932):

"A guaranty by the assignor of the rights that the obligor of the assigned right will perform his duty is not within [the Statute] * * *"

Corbin explains this exception:

"The assignor's promise is made solely to induce the payment of a larger purchase price to him and not in the least for the benefit of the debtor."[1]

2 Corbin, on Contracts, § 390, p. 346 (1950). See also 3 Williston, Contracts,

§ 484, p. 498 (3d ed. Jaeger 1960). Assuming that this exception is a part of Louisiana Law (which premise is not clear), and even assuming sufficient identity in the present case between the promisor (Parkerson personally) and the assignor (Parkerson Insurance Corporation), such an oral promise would contravene the specific written release of Parkerson from liability, which would violate the parol evidence rule. L.S.A. Civil Code Art. 2276, Stack v. DeSoto Properties, Inc., 221 La. 384, 59 So.2d 428 (1952); Zemurray v. Boe, 235 La. 623, 105 So.2d 243 (1958); Piliawsky v. Colar, La.App.1959, 112 So.2d 730. See Parlor City Lumber Co. v. Sandel, 186 La. 982, 173 So.. 737 (1937).

### IV.

Paragraph X of the amended complaint runs into a similar difficulty. It reads:

"Parkerson stated to General Guaranty Insurance Company that he would be personally responsible for the performance of the general agency agreement, undertaking not only the financial obligations of the contract but all other commitments such as those concerning underwriting, notification, collection, production, etc."

This allegation says that Parkerson has taken on the duties of the general agency along with its liabilities. This is clearly another attempt to plead the plaintiff out of the Statute of Frauds, but in the process, the plaintiff has been pleaded right back into the parol evidence rule. Parkerson cannot be the general agent because

---

1. Contrast Williston's discussion of the reason for the general rule: "Why should such promises [to answer for the debt of another], more than others, be subject to that requirement [of a writing]? Doubtless because the promisor has received no benefit from the transaction.

"This circumstance may make perjury more likely, because while in the case of one who has received something the circumstances themselves which are capable of proof show probable liability, in the case of a guaranty nothing but the promise is of evidentiary value.

"Moreover, as the lack of any benefit received by the guarantor increases the hard-

ship of his being called upon to pay, it also increases the importance of being very sure that he is justly charged. If these are the reasons for this clause of the Statute, it is not a mere technicality to require as the fundamental element in a valid oral promise to discharge another's liability the receipt by the promisor of a quid pro quo, or beneficial consideration.

"Whatever conflict there may be in the decisions, it is at least true that without consideration of this kind, such an oral promise is unenforceable. * * *"
3 Williston, Contracts, § 452, pp. 357–358 (3d ed. Jaeger 1960)

New Orleans General Agency is the general agent. The claim that Parkerson has orally taken on the general agency in the face of the written assignment of that agency to N.O.G.A. works a distortion and disfiguration of clear, unequivocal language.

### V.

In sum, then, there are three possible ways by which Parkerson might be liable on this claim: *first,* that he orally guaranteed N.O.G.A.'s obligations. This falls because of the Statute of Frauds. *Second,* that he orally offered to remain personally liable as an inducement to General Guaranty to assign. This liability is negated by the written release. *Third,* that he is liable because he orally promised to be the general agent. This is a solecism: the written contract assigns the general agency to N.O.G.A.

 We are, of course, aware of the obligation to scrutinize the complaint and to let it stand if plaintiff might recover under any state of facts which could be proved in support of the claim, with the complaint construed in the plaintiff's favor. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Fowler v. Southern Bell Telephone & Telegraph Co., 5 Cir. 1965, 343 F.2d 150; King Edward Employees Federal Credit Union v. Travelers Indemnity Co., 5 Cir. 1953, 206 F.2d 726; Kohler v. Jacobs, 5 Cir. 1943, 138 F.2d 440.

However, this is not the sort of problem, usually encountered under modern pleading, in which a complaint fails to allege facts or fails to give notice of a claim. This complaint is plagued not by what it lacks, but by what it contains. All of the paths to relief which the pleading suggests are blocked by the allegations and the attached documents themselves, without more. What this Court said in Feinberg v. Leach, 5 Cir. 1957, 243 F.2d 64, 68, applies here:

"The district court * * * did not abuse its discretion in dismissing this complaint with prejudice, since it appears that no mere amendment could cure its defect and have it state a claim upon which relief could be granted."

See also DeLoach v. Crowley's, Inc., 5 Cir. 1942, 128 F.2d 378 (dictum).

Parkerson, thus immunized by the antibodies of the Statute of Frauds and the parol evidence rule, survives the ravages of the plaintiff's complaint.[2]

Affirmed.

---

2. "There is thus occasionally a tactical, if not strategic, risk in a party's voluntarily abandoning the notice pleading concept of the Federal Rules." Smoot v. State Farm Mutual Automobile Insurance Co., supra, 299 F.2d at 528.