**Albert BROWN, Plaintiff,**

v.

**FINANCIAL SERVICE CORPORATION, INTERNATIONAL, a Georgia corporation, Defendant.**

**FINANCIAL SERVICE CORPORATION OF AMERICA, a Georgia corporation, Plaintiff,**

v.

**Albert BROWN, Defendant.**

**Nos. 70–1733–Civ–JLK, 71–919–Civ–JLK.**

United States District Court, S. D. Florida, Miami Division.

July 19, 1972.

=441(1)

---

Friedman, Britton & Stettin, Miami, Fla., for Albert Brown.

Carl H. Hoffman, Miami, Fla., for Financial Service Corporation of America and Financial Service Corporation International.

KING, District Judge.

In 1968, plaintiff, Albert Brown, accepted employment as senior vice president and director of Financial Service Corporation of America (FSCA). The original terms of plaintiff's employment were set out in a letter-agreement from John B. Keeble, executive vice president of FSCA to plaintiff on October 21, 1968, modified by telegram from Keeble on November 6, 1968 and again by letter from Keeble on December 30, 1968.

Brown has brought case number 70–1733–Civ–JLK alleging that Financial Service Corporation International (FSCI) the parent of FSCA breached an agreement to repurchase 4,000 shares of FSCI stock from Brown at such time as he left defendant's employ. In addition Brown alleges FSCI failed to sell him and repurchase 1,000 shares at $7.00 pursuant to their agreement.

Defendant counter-claimed on a demand note for twelve thousand dollars ($12,000).

Case number 71–919–Civ–JLK is a suit by FSCA against Brown for $11,175.93 representing numerous charges by FSCA against Brown which appear on FSCA's account books.

The parties are now before the Court on cross motions for summary judgment and a stipulation filed May 10, 1972. As to consolidated case no. 70–1733–Civ–JLK, the parties agree that there are no material issues of fact as to any matter raised by either the complaint or counterclaim and that this case can be decided as a matter of law by the Court.

There is also a partial stipulation relating to case 71–919–Civ–JLK. This case, although previously consolidated with case no. 70–1733–Civ–JLK is not in a position to be determined by summary judgment. Case number 70–1733–Civ–JLK upon the stipulation of the parties is ripe for summary judgment.

In accordance with the employment agreement and Brown's desire to purchase 4,000 shares of FSCI stock, Brown executed a form stock purchase agreement providing for said purchase at $5.-00 per share. Paragraph three of the agreement states in part that:

> When for any reason, representative's employment with the company terminates, the company shall have one year from the date of such termination to repurchase any shares sold under this agreement for their fair market value at the time of such repurchase, which fair market value shall be the price adopted for the company's stock by the Board of Directors of the Company in the most recent meeting of the Board preceding the termination of Representative's employment at which such action was taken. This option to repurchase shall be exercised by the Company sending written notice of its intent to exercise . . .

In his cover letter upon returning the signed stock purchase agreement to FSCA, Brown referred to paragraph 3 stating, ". . . we agreed that the company would repurchase almost immediately after termination." Plaintiff takes the position that the cover letter reflects an agreement by FSCA to repurchase upon termination of employment.

■ Upon reading and analyzing paragraph 3 of the stock purchase agreement the Court is convinced that the company was not obligated to repurchase but merely possessed an option. There is no ambiguity in the stock purchase agreement, its terms are clear. The cover letter of June 6, 1969 and any conversations between Brown and FSCA prior or contemporary to the stock purchase agreement may not vary its terms. The parol evidence rule, which is one of substantive law, Beach Keys, Inc. v. Girvin (1968, Fla.App.) 213 So.2d 314, prevents varying an unambiguous written agreement by evidence of a contemporaneous oral understanding, Feinberg v. Leach (5 Cir. 1957) 243 F.2d 64.

■ Section 8–319 of the Uniform Commercial Code which is the substantive law of Georgia and Florida provides that "a contract for the sale of securities is not enforceable by way of action or defense unless:

> (1) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price.

Pursuant to the code, *any* repurchase provision would not be enforceable unless evidenced by a signed writing. There was no such writing for either the 4,000 or 1,000 share blocks that are the subject of this suit.

The employment agreement provided that besides the original 4,000 shares FSCI was obligated to sell an additional 1,000 shares to Brown when they became available from any holder, and at the current price. The affidavit of Samuel

Z. Simons, secretary of FSCI, dated August 12, 1971, states that no shares were available from any holder for allocation to the plaintiff until November 11, 1969, and upon said date, and times subsequent thereto, several transactions took place at ten dollars per share. The affidavit of William H. Branch, Jr., assistant secretary of FSCI dated November 22, 1971, states the same facts as Mr. Simons and is based upon his personal knowledge. Notwithstanding those affidavits FSCI states on page 13 of their motion for summary judgment that they are ready and willing to sell Brown 1,000 shares of stock for $7.00 per share upon payment of seven thousand dollars ($7,000.00). As indicated above however, there is no enforceable obligation on the part of FSCI to repurchase any stock from Brown.

■ The twelve thousand dollar ($12,000.00) note which is the basis for FSCI's counterclaim was executed on November 15, 1968. Brown alleges that the note is actionable solely as a set-off because it was executed as part of the agreement to purchase FSCI's stock and was used to purchase said stock. On page 11 of Brown's motion for summary judgment he states that the purchase of the 4,000 shares was concluded by his borrowing $25,002.00 from FSCI which was immediately assigned to the C & S National Bank of Atlanta, Georgia. That note is attached to the Birkhead deposition. The $12,000.00 note was not used to purchase stock and in fact was executed some 6½ months prior to the stock purchase agreement. Since Brown has only paid $400.00 on the note, there is due and owing to FSCI $11,600.00 plus interest from December 16, 1968 at the current prime rate plus ½% per annum. Since neither party was clear as to his rights and obligations under the employment arrangement, and FSCI retained an attorney primarily to defend Brown's suit rather than to collect the $12,000.00 note, FSCI's prayer for attorney's fees is denied.

The $12,000.00 loan, while not used to purchase stock was however, part and parcel to the employment agreement. Brown and FSCI found their right and duties under that agreement to be vague and consequently entered upon this dispute. It appears from the pleading and depositions that Brown earnestly attempted to resolve his dispute with FSCI but was unable. It was then that *he* turned to the Court for resolution of the conflicts and therefore should not have attorney fees assessed upon the note. It is therefore,

ORDERED and ADJUDGED that:

1. Plaintiff, Albert Brown's motion for summary judgment be and the same is hereby denied.

2. Defendant, counter-plaintiff, Financial Service Corporation, International's motion for summary judgment be and the same is hereby granted. Defendant counter-plaintiff shall have judgment against Albert Brown, plaintiff in the sum of $11,600.00 plus interest from December 16, 1968 at the current prime rates plus ½% per annum.

3. Case no. 71–919–Civ–JLK Financial Service Corporation of America v. Albert Brown, be and it is hereby set for non-jury trial for the two week trial period beginning October 2, 1972 at 9:30 a. m. The stipulation of the parties filed May 10, 1972, shall be binding and provides that all matters relating to the complaint and all matters relating to the claims raised by paragraphs 3a and 3b of the counterclaim do not constitute material issues of fact. Counsel may make those arguments which they deem appropriate and relative to the facts heretofore presented to the Court. As to those matters raised by paragraphs 3c and 3d of the counterclaim, counsel shall present such evidence and argument as they deem appropriate.