**UNITED STATES of America and Federal Maritime Commission, Plaintiffs,**

**v.**

**ABC CONTAINERLINE N.V., et al., Defendants.**

**No. 83 Civ. 6571 (HFW).**

United States District Court, S.D. New York.

Sept. 28, 1983.

---

Rudolf W. Giuliani, U.S. Atty., S.D.N.Y., by Susan M. Campbell, Asst. U.S. Atty., New York City, for U.S.

C. Jonathan Brenner, Gen. Counsel Gordon M. Shaw, David R. Miles, Washington, D.C., for Federal Maritime Comn.

Alfano & Alfano, P.C., by John L. Alfano, Harrison, N.Y., Sandler & Travis, P.A. by Andrew M. Parish, Miami, Fla., for plaintiffs intervenors.

Lambos, Flynn, Nyland & Giardino, New York City, Deasey, Scanlan & Dender, LTD., Philadelphia, Pa., Freehill, Hogan & Mahar, Lilly, Sullivan & Purcell, New York City, Adams, Gardner, Ellis & Inglesby, Savannah, Ga., Walker, Bordelon & Hamlin, New Orleans, La., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, Ala., Dougherty, Ryan, Mahoneym, Pellegrino, Giuffra & Zambito, New York City, Hogg,

Allen, Ryce, Norton & Blue, Coral Gables, Fla., for defendants and defendants intervenors.

## MEMORANDUM DECISION

WERKER, District Judge.

This is a complaint brought by the United States and the Federal Maritime Commission ("FMC") asking for no substantive relief but for the issuance of a preliminary injunction enjoining the defendants, some 115 ocean common carriers, from implementing or enforcing the "50 mile rules" ("Rules") pending the outcome of the Commission's investigation into their validity.[1] Plaintiffs moved by order to show cause on September 9, 1983 for a preliminary injunction pursuant to Fed.R.Civ.P. 65. Oral argument and an evidentiary hearing were held on September 19, 1983. Defendants presented testimony at the hearing but plaintiffs rested on the affidavits provided in their moving papers. For the reasons that follow, the motion is denied. The following are also my findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).

## FACTS

In short, the "50 mile rule" is a provision which requires members of the International Longshoremen's Association ("ILA") to load and unload certain containers of cargo coming from or destined to areas within 50 miles from an ILA represented port. The Rule further requires the defendants to deny containers to persons performing cargo consolidation services within 50 miles of that port. The most recent version of the Rules is incorporated into the Master Contract between defendants and the ILA which is due to expire on September 30, 1983.[2]

[1.] Parties intervening in support of plaintiffs include: International Association of NVOCCs, Florida Customs Brokers and Forwarders Association and American Trucking Association. Parties intervening in support of defendants include: South Atlantic Employers Negotiating Committee, West Gulf Maritime Association, Southeast Florida Employers Port Association, Inc., New Orleans Steamship Association, Inc., Mobile Steamship Association, Inc., New York Shipping Association, Inc., Carriers Container Council and Council of North Atlantic Shipping Association.

[2.] The evolution of the Rules is set forth by Justice Thurgood Marshall in *FMC v. Pacific Maritime Association,* 435 U.S. 40, 98 S.Ct. 927, 55 L.Ed.2d 96 (1978).

The Rule has a complex history. In 1978, the FMC addressed the 50 mile rule in two proceedings wholly separate from the instant action. The 1978 actions, FMC Docket Nos. 73–14, 74–40, resulted in a finding by the Commission that the Rule as it applied to three respondents violated the Shipping Act of 1916, 46 U.S.C. § 801, et seq., and the Intercoastal Shipping Act of 1933, 46 U.S.C. § 843 et seq. The decision was appealed to the United States Court of Appeals for the District of Columbia and on March 2, 1982, the Court affirmed the FMC's exercise of jurisdiction over the matter but remanded to allow the FMC to consider the effect of two recent Supreme Court cases, *FMC v. Pacific Maritime Ass'n,* 435 U.S. 40, 98 S.Ct. 927, 55 L.Ed.2d 96 (1980), and *NLRB v. International Longshoremen's Ass'n,* 447 U.S. 490, 100 S.Ct. 2305, 65 L.Ed.2d 289 (1980). *Council of N. Atlantic Shipping Ass'n v. FMC* ("CONASA"), 672 F.2d 171 (D.C.Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982).

While the D.C. decision was pending, the Commission referred the instant action, FMC Docket No. 81–11, to an Administrative Law Judge for investigation and review for possible violations of the Shipping Act. FMC Docket No. 81–11 is virtually identical to the 1978 actions except that the number of respondents has increased from 3 to approximately 115.

With the 81–11 action pending and on May 27, 1982, the FMC reaffirmed its findings in the 1978 actions but discontinued proceedings in favor of the larger 81–11 investigation. Respondents petitioned the Supreme Court for review of the case. *CONASA,* 672 F.2d 171 (D.C.Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982). While this petition was pending, the District of Columbia Circuit issued a Supplemental Opinion Following Remand. *CONASA,* 690 F.2d 1060 (D.C.Cir.1982). The Court vacated the FMC's order to discontinue the 1978 actions and ordered it to defer action on those cases until the FMC had resolved the 81–11 proceeding and until the Supreme Court had acted on the petition.

Throughout the FMC's investigation of the Rules, there has been considerable parallel action before the National Labor Relations Board ("NLRB"). The NLRB enjoined the implementation of the Rules in January and February of 1981. The NLRB dissolved the injunction in late February when it found that the Rules were valid work preservation provisions. *ILA (Dolphin Forwarding, Inc.),* 266 NLRB No. 54 (Feb. 28, 1983). The NLRB decision is now pending in the Fourth Circuit. *American Trucking Ass'n v. NLRB,* Nos. 1185, 1214, 1424 and 1486 (filed Mar. 1, 1983).

On April 18, 1983, the Rules were reimplemented by agreement between a number of multi-employer bargaining units and local ILAs to the extent permitted by the NLRB. On June 30, 1983 the ILA gave notice of its intent to reopen the collective bargaining agreements to consider problems that had arisen with the Rules. The parties reached a new agreement which was subsequently filed with the FMC.

The FMC is presently investigating the lawfulness of the Rule in Docket No. 81–11. Hearings before the administrative law judge were concluded on August 4, 1983 and the post hearing briefs are due in December. A decision is expected in July or August, 1984.

Plaintiffs argue that a preliminary injunction should issue to preserve the status quo pending resolution of the 81–11 proceeding now before the FMC. They argue that there is a significant likelihood of success in light of the 1978 proceedings finding the Rules unlawful and that the earlier actions have already established that irreparable injury will ensue to various cargo consolidators who have already lost substantial revenue or been forced out of business as a result of the implementation of the Rule. The Longshoremen are protected from harm by "container royalties" and guaranteed income protection incorporated into the collective bargaining agreements. Plaintiffs argue further that the Rule as it stands is detrimental to the public interest because it adds significantly to the cost of

transportation. Finally, plaintiffs submit that an injunction will merely return the parties to their pre-April 1983 status.

In support of their motion, plaintiffs present the affidavits of 24 shippers and consolidators ("affiants") as well as the affidavit of an FMC economist. Each of the affiants outline the effect the Rules have had on their various industries in terms of loss of business, loss of jobs, costs of relocation or of leasing containers, and diminution of efficiency. The economist provides data on the adverse impact an implementation of the Rules will have on the public in terms of increases in the cost of transportation as the result of decreases in efficiency in the shipping industry.

The essence of defendants' argument is that if the court enjoins action on the Rule, the injunction will interrupt collective bargaining now in progress. This, in turn, will stall the signing of an agreement and will result in strikes across the country on October 1. Moreover, defendants' argue that plaintiffs have not been irreparably harmed by the implementation of the Rules and an injunction is therefore not warranted.

Through affidavits and oral testimony from carriers and the ILA, defendants present evidence on the Rule itself and the alternatives available to shippers and consolidators under it. In addition, defendants describe the effect a failure to implement the Rules has had and will have on the shipping industry including the break down of negotiations on a new contract that would have nation-wide implications in the event of a strike. Defendants also present evidence of the impact containerization has had on ILA members in terms of the loss of jobs, business and fringe benefits.

## DISCUSSION

This problem is akin to the one faced by Judge Tenney in *Federal Maritime Commission v. Atlantic & Gulf/Panama Canal Zone,* 241 F.Supp. 766 (S.D.N.Y.1965). As in that case,

> [t]he problem is compounded in the case at bar for the Court must be careful not to impinge on the primary jurisdiction of the administrative agency. For this Court would be loath to make a determination to any extent on the merits of the proceedings pending before the Commission and no such finding is intended. I am only weighing the equities of the respective positions and finding whether sufficient evidence has been introduced to warrant the relief. The fact that the agency has not succeeded herein is based on the evidence, or the lack thereof, presented in this hearing and in no way indicates the strength or weaknesses of the plaintiffs' position in the hearings before the Commission.

*Id.* at 778.

The matter of the 50 mile rule has been pending for at least ten years. The FMC's jurisdiction to determine the validity of the rules is not in doubt.[3] Nevertheless, the evidence plaintiffs present to this court can be accorded little weight. Affidavits of persons who did not testify in FMC Docket No. 81–11 and who respondents did not have an opportunity to cross examine and the statement of plaintiffs' proffered expert who also did not testify in FMC Docket No. 81–11 and who respondents also did not have the opportunity to cross examine must largely be discounted. On the other hand, from the testimony of respondents, there is no doubt in the mind of this court that the filing of this action for an injunction has caused direct loss to the shippers as the

---

**3.** Defendants challenge this court's jurisdiction to issue an injunction in light of the anti-injunction provisions of the Norris LaGuardia Act. *See* 29 U.S.C. § 101. At the hearing on this motion, the court refused to hear argument on the jurisdictional issue. The FMC clearly has jurisdiction to determine the anticompetitive effects of behavior by maritime industries and, in furtherance of that purpose, this court can exercise its general equitable powers to enjoin conduct which may violate the shipping laws. *See e.g., CONASA,* 672 F.2d 171 (D.C.Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982) (the FMC has jurisdiction); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 178 (5th Cir.1975) (federal court may issue an injunction).

result of the diversion of cargo and the probability of a nationwide strike.[4]

One would wish that an injunction could issue solely on the basis of being in aid of an agency's jurisdiction. However, this agency has no express statutory authority to impose such an injunction before a decision is reached on the lawfulness of a particular practice. Consequently, the FMC must look to the federal courts to exercise their general equitable powers to enjoin respondents. We are constrained therefore to apply the traditional standards outlined in *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70 (2d Cir.1979). On a motion for a preliminary injunction, plaintiffs must demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Id.* at 72.

On balancing the equities, even if we take at face value the affidavits of the 24 shippers, truckers, non-vessel operating common carriers and warehousemen and the testimony of the ship owners, in my opinion, they would balance equally upon the scales. The same is true as to irrepara-

ble injury. Since the burden is upon the applicant to demonstrate both irreparable injury and that the equities tip in its favor, plaintiffs are not entitled to injunctive relief.

Ten years of litigation leaves no doubt in this court's mind that there are serious questions of fact and law that must be determined by the FMC. Perhaps the denial of this motion will induce a prompt decision by the administrative law judge and the Commission.

## CONCLUSION

Accordingly, the court finds that plaintiffs have not shown the type of immediate, irreparable harm nor the requisite equitable factors necessary to justify the issuance of an injunction. Thus, plaintiffs' motion for a preliminary injunction pending the outcome of the proceedings in FMC Docket No. 81–11 is denied. The complaint is dismissed without prejudice so that plaintiffs can seek a stay of any further action by at least some of the respondents from the D.C. Circuit pending the outcome of FMC Docket No. 81–11.[5]

SO ORDERED.

4. Defendants present evidence that they have already suffered from the diversion of cargo away from ILA ports as the result of the breakdown in negotiations on the master contract and the uncertainty concerning the status of these proceedings. Mr. Burns, President of the New Orleans Steamship Association and Mr. Detweiler, President of CONASA, testified that negotiations were suspended when the union learned of the filing of plaintiffs' complaint. Detweiler at 81; Burns at 94. Mr. Burns stated that suspension of negotiations has devastated the New Orleans Steamship members and that there is still uncertainty as to when the union will "pull a strike on them". Burns at 99. He testified that because of this uncertainty the shippers are diverting their cargo to other ports. *Id.* As an example, Mr. Burns stated that immediately after the announcement that the complaint had been filed in this case, a shipment of 60 to 70 tractors was diverted through Canada. *Id.* Mr. Murphy, Vice President of Labor Relations for United States Lines, testified that because the contract was to expire in ten days and because of these proceedings, United States Lines has experienced a diminution of its revenue forecast over a two

week period of one and a half to two million dollars. Murphy at 77. Moreover, because shippers often book cargo months in advance in order to make schedules, defendants have suffered long term harm as the result of the diversion of cargo. Burns at 97–98.

Defendants' testimony also shows that the failure to implement the Rules will have a detrimental effect on fringe benefits because of the loss of jobs. Detweiler at 81. The guaranteed annual income ("GAI") payments will decrease as a direct result of the loss in man hours on the piers. *Id.* at 84. Contributions by the employers to the GAI, which are generally funded by the assessment on man hours or, in the West, by an assessment on tonnage, will go up as the result of the depletion of the GAI fund. Detweiler at 84; Arnett at 92. In some areas of the country, the GAI program is already in jeopardy. Arnett at 91–92. Accordingly, even if a strike is not imminent, defendants have demonstrated direct loss to shippers by reason of an injunction.

5. The complaint is dismissed since plaintiffs demand relief based solely on the issuance of the injunction. It is dismissed without preju-

dice because at least three of the respondents in this action are also respondents in FMC Docket Nos. 73–17 and 74–40. The D.C. Circuit has retained jurisdiction in FMC Docket No. 73–17 and 74–40 pending a review of those cases by the FMC in light of the outcome of FMC Docket No. 81–11. *See* CONASA, *supra,* Supplemental Opinion Following Remand, 690 F.2d 1060 (D.C.Cir.1982). In furtherance of that jurisdiction, plaintiffs should seek relief in the United States Court of Appeals for the District of Columbia Circuit at least with respect to those respondents who are parties to the earlier actions.