SIGNATURE OF ALL OTHER PERSONS 18 YEARS OR OLDER AND LISTED IN RE- SPONSE TO QUESTION NO. 7:

_____

_____

_____

_____

_____

_____

_____

SIGNATURE OF ASSISTING COUNSEL, IF ANY

SIGNATURE OF ASSISTING COUNSEL, IF ANY

**MARITREND, INC., Plaintiff,**

v.

**The GALVESTON WHARVES, the Board of Trustees of the Galveston Wharves, John G. Unbehagen, W.H. Nelson, Harry Brown, Louis Pauls, Jr., Rudy Teichman and Doug Marchand, Defendants.**

**Civ. A. No. H–93–1124.**

United States District Court, S.D. Texas, Houston Division.

Dec. 3, 1993.

Jeffrey C. Landa, Hutcheson & Grundy, Houston, TX, for plaintiff Maritrend, Inc.

Benjamin R. Powell, David E. Cowan, McLeod, Alexander, Powell & Apffel, P.C.,

Galveston, TX, for defendants the Galveston Wharves, the Board of Trustees of the Galveston Wharves, John G. Uubehagen, W.H. Nelson, Harry Brown, Louis Pauls, Jr., Doug J. Marchand.

John Eckel, Mills, Shirley, Eckel & Bassett, Galveston, TX, for defendants Rudy Teichman.

Sidney Ravkind, Mandell & Wright, Houston, TX, for W.H. Nelson.

*MEMORANDUM AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO ABATE AND MOTION TO STAY DISCOVERY AND DENYING DEFENDANTS' MOTION TO DISMISS*

STACY, United States Magistrate Judge.

Pending before the Court is Defendants the Galveston Wharves, the Board of Trustees of the Galveston Wharves, John G. Unbehagen, W.H. Nelson, Harry Brown, Louis Pauls, Jr., Rudy Teichman, and Doug J. Marchand's Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Motion to Abate or Defer and Motion to Stay Discovery (Instrument No. 15). On November 4, 1993, United States District Judge Ewing Werlein, Jr. referred the motions to United States Magistrate Judge Frances H. Stacy for a Memorandum and Recommendation.

After considering the motions, submissions of the parties, and applicable law, the Court RECOMMENDS that Defendants' Motion to Dismiss be DENIED for the reasons set forth below; that Defendants' Motion to Abate or Defer be GRANTED; and that Defendants' Motion to Stay Discovery be GRANTED.

## I. Background

On April 16, 1993, Maritrend, Inc. ("Maritrend") brought suit against the Galveston Wharves, the Board of Trustees of the Galveston Wharves, John G. Unbehagen, W.H. Nelson, Harry Brown, Louis Pauls, Jr., Rudy Teichman, and Doug J. Marchand (collectively "Defendants") for violations of 42 U.S.C. § 1983 and violations of the Sherman and Clayton Acts, 15 U.S.C. § 1, et seq. Maritrend seeks injunctive relief and damages on its claim that Defendants have discriminated against it and denied it a stevedore license because it does not utilize International Longshoreman's Association ("ILA") labor, because Plaintiff's employees are not represented by the ILA and because Plaintiff is a non-union employer.

## II. Summary of Defendants' Argument

On April 30, 1993, Defendants filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Maritrend has failed to state a cause of action for which relief may be granted. In its motion, Defendants argue that this case should be dismissed or abated for the following reasons:

1. Plaintiff's allegations are governed by the Shipping Acts of 1916 and the International Ocean Commerce Transportation Act and subject to the primary jurisdiction of the Federal Maritime Commission;

2. The Shipping Act of 1916 and the International Ocean Commerce Transportation Act bar Plaintiff's antitrust claims;

3. Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983;

4. Defendants John G. Unbehagen, W.H. Nelson, Harry Brown, Louis Pauls, Jr., Rudy Teichman, and Doug J. Marchand have absolute and qualified immunity;

5. Defendants, the Galveston Wharves, and the Board of Trustees of the Galveston Wharves have immunity from Plaintiff's antitrust claims;

6. The issues presented in this case are not ripe; and

7. Defendants are not pro union and have not discriminated against Plaintiff.

Maritrend, in its response to Defendants' Motion to Dismiss, disputes all Defendants' grounds for dismissal and contends that it has stated a claim for relief under 42 U.S.C. § 1983 and the federal antitrust laws. Maritrend contends that the affidavits and other evidence submitted by Defendants are not appropriate for consideration by this Court

in determining whether Maritrend has stated a claim upon which relief may be granted.

### III. Dismissal and Conversion Standard under Rule 12(b)(6)

■ Rule 12(b)(6) allows for dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Such dismissals, however, are rare, *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir.1986), and only granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

■ In determining whether a dismissal is warranted pursuant to Rule 12(b)(6), the Court accepts as true all allegations contained in the plaintiff's complaint. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Gargiul v. Tompkins*, 704 F.2d 661, 663 (2nd Cir.1983), *vacated on other grounds*, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984). In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Id.* "To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." *Clark*, 794 F.2d at 970.

■ A motion to dismiss may be converted by the court into a motion for summary judgment if matters beyond the pleading are presented to and accepted by the court. Rule 12(b) provides in pertinent part:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Any party may bring the conversion provision into operation by submitting extraneous matters. *Hadges v. Yonkers Racing Corp.*, 733 F.Supp. 686 (S.D.N.Y.), *aff'd*, 918 F.2d 1079 (2d Cir.1990), *cert. denied*, 499 U.S. 960, 111 S.Ct. 1583, 113 L.Ed.2d 648 (1991). The Fifth Circuit Court of Appeals has traditionally allowed motions to dismiss to be converted into motions for summary judgment where matters outside the pleadings are presented for the court's consideration. *General Guaranty Ins. Co. v. Parkerson*, 369 F.2d 821 (5th Cir.1966).

■ A court has complete discretion in determining whether or not to accept material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion. *Isquith on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 193 n. 3, (5th Cir.1988), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969)). This discretion is exercised when the conversion is likely to facilitate the disposition of the action. *Id.* If the extra-pleading material is comprehensive and will enable a rational determination of a summary judgment motion, the court is likely to accept it; when it is scanty, incomplete, or inconclusive, the court probably will reject it. *Id.* Once a court has decided to accept matters outside the pleadings, it must convert the motion to dismiss into one for summary judgment. *Kaminsky v. Rosenblum*, 737 F.Supp. 1309 (S.D.N.Y.1990); *See also Carter v. Stanton*, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972), *on remand*, 350 F.Supp. 1337 (S.D.Ind.1972), *vacated on other grounds*, 416 U.S. 918, 94 S.Ct. 1916, 40 L.Ed.2d 276 (1974).

### IV. The Court Declines to Convert the Motion to Dismiss into a Motion for Summary Judgment

■ Defendants, in their Motion to Dismiss, have attached affidavits in support of their motion, a copy of the agreement filed by the Galveston Wharves with the Federal Maritime Commission, correspondence between the parties, various orders and judgments in cases in which Defendants were parties, and a decision by the Federal Maritime Commission. Much of what Defendants have attached is evidence properly considered in a motion for summary judgment. While the Court has complete discretion to

convert a motion to dismiss into a motion for summary judgment and thereby consider the matters submitted by the parties that are beyond the pleadings, the Court declines to treat Defendants' Motion to Dismiss as a motion for summary judgment. The proceedings in this case were stayed in May, 1993, shortly after the case was filed, to give the Court the opportunity to rule on Defendants' Motion to Dismiss. Due to the Court-instituted stay, Maritrend has been unable to conduct discovery in order to controvert the claims and arguments set forth by Defendants in the materials attached to their Motion to Dismiss. Defendants' Motion to Dismiss will therefore not be treated as a motion for summary judgment and the materials submitted by the parties that are beyond the pleadings will not be considered.

### V. Maritrend's allegations are governed by the Shipping Act of 1916 and the International Ocean Commerce Transportation Act

Defendants argue that the Shipping Act of 1916 and the International Ocean Commerce Transportation Act ("IOCTA") vest jurisdiction over Maritrend's claims with the Federal Maritime Commission, thereby preempting this Court's jurisdiction. Maritrend contends that regardless of the applicability of the Shipping Acts of 1916 and the IOCTA, this Court has jurisdiction by virtue of its claim brought under 42 U.S.C. § 1983, and its claims brought under the Sherman and Clayton Acts. Maritrend further contends that the Federal Maritime Commission has no jurisdiction to adjudicate its constitutional claims or its antitrust claims.

Upon a review of the relevant statutes, case law, and the allegations of Maritrend in its First Amended Complaint, the Court finds that: 1) the Shipping Act of 1916 applies to Maritrend's claims; 2) the International Ocean Commerce Transportation Act applies to Maritrend's claims; and 3) Maritrend's antitrust claims are preempted by the provisions of the Shipping Act of 1916 and provisions of the International Ocean Commerce Transportation Act.

### A. The Shipping Act of 1916, 46 U.S.C.App. § 801 et seq., applies to the facts and claims alleged by Plaintiff

■ Defendants argue that the Shipping Act of 1916 governs the facts and claims alleged by Maritrend in its First Amended Complaint. Defendants contend that all parties to this suit are subject to the Act's provisions and that Defendants' conduct, as alleged by Maritrend, is proscribed by the Act.

The Shipping Act of 1916, 46 U.S.C.App. § 801 et seq., provides for the comprehensive regulation of the shipping industry in the United States. It applies to common carriers "engaged in the transportation by water of passengers or property" in interstate commerce, and to any person "carrying on the business of forwarding or furnishing wharfage, dock or warehouse, or other terminal facilities in connection with a common carrier by water." 46 U.S.C.App. § 801. It allows parties to enter into agreements and prohibits certain discriminatory acts. Under the Shipping Act of 1916, the Federal Maritime Commission ("FMC") is vested with authority to oversee and enforce the Shipping Act's provisions.

According to Maritrend, Defendants have discriminated against it and denied it a stevedore license because it does not utilize ILA labor, because its employees are not represented by the ILA and because it is a non-union employer. Maritrend further contends that Defendants are engaged in a course of conduct to insure that only stevedore companies using union labor operate in Galveston, Texas.

Taking Maritrend's allegations as true for purposes of Defendants' Motion to Dismiss, 46 U.S.C.App. § 815 of the Shipping Act proscribes Defendants' conduct:

It shall be unlawful for any common carrier by water in interstate commerce, or other person subject to this chapter, either alone or in conjunction with any other person, directly or indirectly—

First. To make or give any undue or unreasonable preference or advantage to any particular person, locality, or description of traffic in any respect whatsoever, or

to subject any particular person, locality, or description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

An "other person subject to this chapter" is "any person carrying on the business of forwarding or furnishing wharfage, dock or warehouse, or other terminal facilities in connection with a common carrier by water." 46 U.S.C.App. § 801.

Based on the pleadings, Defendants, who fall within the definition of an "other person subject to this ·chapter" are subject to the Shipping Act of 1916. Moreover, the Shipping Act of 1916, which provides for acts of discrimination as alleged by Maritrend, governs Maritrend's claim that Defendants discriminated against it because it does not utilize ILA labor, because its employees are not represented by the ILA and because it is a non-union employer.

**B. The International Ocean Commerce Transportation Act, 46 U.S.C.App. § 1701 et seq., also applies to the facts and claims alleged by Maritrend**

■■ Defendants argue that the International Ocean Commerce Transportation Act governs the facts and claims alleged by Maritrend in its First Amended Complaint. Defendants contend that all parties to this suit are subject to the Act's provisions and that Defendants' conduct, as alleged by Maritrend, is proscribed by the Act.

The IOCTA, 46 U.S.C.App. § 1701 et seq., provides for the comprehensive regulation of international shipping. The purpose of the Act is to "establish a nondiscriminatory regulatory process for the common carriage of goods by water in the foreign commerce of the United States with a minimum of government intervention and regulatory costs" and "to provide an efficient and economic transportation system in the ocean commerce of the United States that is, insofar as possible, in harmony with, and responsive to, international shipping practices." 46 U.S.C.App. § 1701. The IOCTA applies, in relevant part, "to agreements (to the extent the

agreements involve ocean transportation in the foreign commerce of the United States) among marine terminal operators and among one or more marine terminal operators and one or more ocean common carriers to discuss, fix or regulate rates or other conditions of service and engage in exclusive, preferential, or cooperative working agreements." 46 U.S.C.App. § 1703. Under the IOCTA, the FMC is vested with authority to oversee and enforce the provisions of the IOCTA.

As discussed above, Maritrend's allegations center around Defendants' refusal to grant Maritrend a stevedore license. Maritrend contends that it has been discriminated against and denied a stevedore license because it does not utilize ILA labor, because its employees are not represented by the ILA and because it is a non-union employer. Maritrend further contends that Defendants are engaged in a course of conduct to insure that only stevedore companies using union labor operate in Galveston, Texas.

Taking Maritrend's allegations as true for purposes of Defendants' Motion to Dismiss, the IOCTA applies to the facts and claims raised in the instant case. The IOCTA applies to agreements involving or related to ocean transportation in the foreign commerce of the United States that are filed under its provisions with the FMC. It also applies to agreements among marine terminal operators to "discuss, fix or regulate rates or other conditions of service" and to agreements to "engage in exclusive, preferential, or cooperative working arrangements." 46 U.S.C.App. § 1703(b). According to the pleadings, Defendants, who fall within the definition of a marine terminal operator under the IOCTA,[1] filed an agreement with the FMC under the IOCTA, thereby subjecting itself to the provisions of the IOCTA.

The provisions of IOCTA proscribe Defendants' conduct as it has been alleged by Maritrend:

No common carrier, either alone or in conjunction with any other person, directly

---

**1.** A marine terminal operator is defined as "a person engaged in the United States in the business of furnishing wharfage, dock, warehouse, or other terminal facilities in connection with a

common carrier." 46 U.S.C.App. § 1702(15). The Galveston Wharves provide both wharfage and dock facilities.

or indirectly, may subject any particular person, locality, or description of traffic to an unreasonable refusal to deal or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

46 U.S.C.App. § 1709(b)(12). The IOCTA, which provides recourse for acts of discrimination as alleged by Maritrend, governs Maritrend's claim that Defendants discriminated against it because it does not utilize ILA labor, because its employees are not represented by the ILA and because it is a non-union employer.

### C. The Shipping Act of 1916 and the IOCTA bar Maritrend's antitrust claims

 Defendants argue that the Shipping Act of 1916 and the IOCTA bar Maritrend's antitrust claims. Defendants point specifically to 46 U.S.C.App. § 1706(a) which precludes antitrust actions based on or related to agreements filed with the FMC:

The antitrust laws do not apply to any agreement that has been filed under section 1704 of this title and is effective under section 1704(d) or section 1705 of this title, or is exempt under section 1715 of this title from any requirement of this chapter. 46 U.S.C.App. § 1706(a).

Section 1706(a) has been interpreted to bar:
private antitrust lawsuits, providing instead for an administrative complaint and review process before the FMC, which has exclusive jurisdiction over such matters. Thus, while no private party may sue for damages or for injunctive relief under the antitrust laws for conduct falling within the purview of the Act, the FMC is empowered to order reparations, including double damages, to impose sanctions and penalties for prohibited conduct, and to file suit in federal district court against the offending party.

*A & E Pacific Construction Co. v. Saipan Stevedore Co.*, 888 F.2d 68, 71 (9th Cir.1989). Moreover, agreements between common carriers under the Shipping Act of 1916, once approved by the FMC are exempt from the antitrust laws. *U.S. Lines, Inc. v. Federal Maritime Commission*, 584 F.2d 519 (D.C.Cir.1978).

Maritrend's antitrust claims, which arise from and are related to agreements filed with and approved by the FMC, are preempted by the Shipping Act and the IOCTA.

### VI. Maritrend, in claiming violations of the equal protection clause of the Fourteenth Amendment, states a claim under 42 U.S.C. § 1983

Defendants contend that Maritrend, who has no federally protected right to remain non-union, has failed to state a cause of action under 42 U.S.C. § 1983 because it cannot maintain an action for violations of the National Labor Relations Act ("NLRA") or violations of the Fourteenth Amendment. Maritrend argues in response that under the NLRA that it has a federally protected right to remain non-union until such time as its employees decide whether they want union representation. Maritrend further argues that under the Fourteenth Amendment it was denied due process and equal protection under the law arising from the denial of its application for a stevedore license.

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The United States Supreme Court in *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 105, 110 S.Ct. 444, 447, 107 L.Ed.2d 420 (1989), discussed the scope of 42 U.S.C. § 1983:

Section 1983 provides a federal remedy for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." As the language of the statute plainly indicates, the remedy encompasses violations of federal statutory as well as constitutional rights. We have repeatedly

held that the coverage of the statute must be broadly construed ... It provides a remedy "against all forms of official violation of federally protected rights."

 A two step process is employed for determining whether a cause of action may be brought under § 1983. First, the court must find that a plaintiff has alleged a violation of a federally protected right. *Id.* at 106, 110 S.Ct. at 448. Second, the court must find that Congress has not "specifically foreclosed a remedy under § 1983" for the injuries alleged by the plaintiff. *Id.* The plaintiff has the burden of asserting a violation of a federally protected right. *Id.* When claiming a violation of a federal statute, the statute, by its terms or as interpreted, must create "obligations 'sufficiently specific and definite' to be within 'the competence of the judiciary to enforce.'" *Id.* at 108, 110 S.Ct. at 449 (citing *Wright v. Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 432, 107 S.Ct. 766, 775, 93 L.Ed.2d 781 (1987)). Only after a plaintiff has met its burden does a defendant, in challenging the plaintiff's right to bring suit under § 1983, have the burden of establishing that Congress "by providing a comprehensive enforcement mechanism for protection of a federal right", foreclosed a remedy under § 1983. *Id.* 493 U.S. at 106, 110 S.Ct. at 448.

*1. Maritrend does not have a federally protected right to remain non-union under the provisions of the NLRA*

 Defendants argue that Maritrend does not have a federally protected right to remain non-union. According to Defendants, Maritrend, who has no association with any union, has no rights under the NLRA or the case of *Golden State.*

Maritrend, on the other hand claims to have a federally protected right to remain non-union until such a time as its employees accept union representation. Specifically, Maritrend claims to be protected by sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157, 158:

> Section 7 of the NLRA (29 U.S.C. § 157) provides employees with the right to participate in and to refrain from organizing, forming, joining, assisting, or bargaining collectively through labor unions. Section 8 of the NLRA (29 U.S.C. § 158) "prohibits interference with the right to choose not to bargain collectively."

Maritrend's reliance on sections 7 and 8 of the NLRA to provide it a federally protected right to remain non-union is misplaced. Upon a thorough review of sections 7 and 8 of the NLRA, the Court can find no language assuring Maritrend the right which it claims. Section 7 of the NLRA gives employees rights to organize and participate in union activities; it gives no rights to employers such as Maritrend:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title. 29 U.S.C. § 157.

Likewise, Section 8 is inapplicable. Section 8 of the NLRA sets forth a laundry list of activities which are considered unfair labor practices:

> (a) It shall be an unfair labor practice for an employer—

> (1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157 of this title;

> (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it;

> (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization;

> (4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;

(5) to refuse to bargain collectively with the representative of his employees, subject to the provisions of section 159(a) of this title.

Nowhere in section 8 of the NLRA is an employer, such as Maritrend, given the right to remain non-union until such a time as its employees elect union representation. The fact that Maritrend is currently non-union is nothing more than a coincidence derived from the rights of its employees to remain non-union or elect union representation under the NLRA. Because there is no specific or definite statement in the NLRA granting Maritrend the right to remain non-union, and because such a right is not implicit in sections 7 and 8 of the NLRA, Maritrend has failed to state a cause of action under 42 U.S.C. § 1983.

In claiming that it has a federally protected right to remain non-union, Maritrend relies heavily on *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). According to Maritrend, "Defendants refusal to grant Plaintiff a stevedore license because it does not have a contract with the ILA or utilize ILA labor is just as clear a violation of Plaintiff's NLRA rights as was the City of Los Angeles' denial of a renewal license to the taxi cab company in *Golden State II*." *Golden State* is clearly distinguishable from the case at bar.

In *Golden State*, the renewal of plaintiff's taxi franchise with the City of Los Angeles was conditioned by the Los Angeles City Council on the settlement of a labor dispute between plaintiff and its striking drivers represented by the International Brotherhood of Teamsters. The plaintiff brought suit against the City of Los Angeles under 42 U.S.C. § 1983 for violations of rights insured under the NLRA. The United States Supreme Court framed the issue raise by the parties as "whether the NLRA creates

'rights' in labor and management that are protected against governmental interference." *Id.* at 108, 110 S.Ct. at 449. In addressing that issue, the Court relied on its decision in *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1972)[2] and held that the plaintiff had a "right to use permissible economic tactics to withstand" the strike by its drivers and that the City of Los Angeles' interference with that right was grounds for suit under 42 U.S.C. § 1983. *Golden State*, 493 U.S. at 112, 110 S.Ct. at 451.

The case at bar is clearly distinguishable. First, Maritrend is not involved in a labor dispute, Maritrend's employees are not members of a union, and Maritrend is not bound by a union contract with its employees. Second, Maritrend is not claiming a right to use "economic tactics" to withstand a strike or any other union activity. Third, there are no allegations that Defendants are in any way interfering with the management rights of Maritrend under the NLRA. There is no indication in the pleadings that the granting of a stevedore license to Maritrend was conditioned by Defendants on the unionization of Maritrend's employees. Fourth, as is evident from sections 7 and 8 of the NLRA cited by Maritrend, *Maritrend's employees* have a right to remain non-union until such time as they elect union representation; Maritrend, as an employer, has no such right. Therefore, Maritrend who has no federally protected right to remain non-union under the NLRA, has not stated a claim under 42 U.S.C. § 1983.

### 2. Maritrend has not stated a cause of action under the due process clause of the Fourteenth Amendment

Maritrend also claims to be entitled to the relief afforded by 42 U.S.C. § 1983 because Defendants' denial of its stevedore license was in violation of Maritrend's Fourteenth Amendment due process rights. Mar-

---

**2.** In *International Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), the Supreme Court found that "Congress intended to give parties to a collective bargaining agreement the right to make use of economic weapons, not explicitly set forth in the Act, free of governmental interference."

*Golden State*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). " '[T]he congressional intent in enacting the comprehensive federal law of labor relations' " required that certain types of peaceful conduct " 'must be free of regulation.' " *Id.* (quoting *Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 155, 96 S.Ct. 2548, 2560, 49 L.Ed.2d 396 (1976)).

itrend alleges in its Response to Defendants' Motion to Dismiss:

> Despite meeting all requirements established by Defendants for a stevedore license, Defendants arbitrarily and capriciously denied Plaintiff a stevedore license. Defendants' conduct deprived Plaintiff of due process which is guaranteed by the Fourteenth Amendment.

A party may maintain an action under 42 U.S.C. § 1983 for violations of the due process clause of the Fourteenth Amendment if it can show that it has been deprived of "life, liberty or property, without due process of law." Maritrend's allegations, which do not raise a life or liberty interest, can only be read as implicating a property interest.

Section 1983 "does not guarantee a person the right to bring a federal suit for denial of due process in every proceeding in which he is denied a license or permit. If that were the case, every allegedly arbitrary denial by a town or city of a local license or permit would become a federal case, swelling our already overburdened federal court system beyond capacity." *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2nd Cir.1985). Only in cases in which a plaintiff has alleged a denial of a valid property interest will a § 1983 case be maintained. *Id.*

 A valid property interest "in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Unilateral expectations are not considered property interests. *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir.1980). In general, a license such as a stevedore license, is based on a unilateral expectation, not on a legitimate claim of entitlement. *See generally Davidson v. Clinton*, 826 F.2d 1430, 1434 (5th Cir.1987) (holding that there is no prop-

erty right in a liquor license, which is merely a "revocable permit or alienable privilege").

In the instant case, Maritrend has failed to allege entitlement to a stevedore license under either state or federal law. Maritrend has also failed to allege anything more than an expectation of a stevedore license. Maritrend, who has no property right to a stevedore license, has failed to state a violation of the due process clause of the Fourteenth Amendment and may not maintain this claim under 42 U.S.C. § 1983.

### 3. Maritrend has stated a cause of action under the equal protection clause of the Fourteenth Amendment

 Maritrend also claims to be entitled to the relief afforded by 42 U.S.C. § 1983 because Defendants' denial of its stevedore license was in violation of Maritrend's Fourteenth Amendment equal protection rights. Maritrend alleges in its Response to Defendants' Motion to Dismiss:

> Plaintiff was denied its equal protection rights also guaranteed by the Fourteenth Amendment since Defendants treated Plaintiff differently from similarly situated entities that applied for a stevedore license.

A party may maintain an action under 42 U.S.C. § 1983 for violations of the equal protection clause of the Fourteenth Amendment if it alleges that it was treated differently from others similarly situated. Maritrend, who has distinctly alleged that its right to equal protection has been violated by Defendants' disparate treatment has stated a cause of action under 42 U.S.C. § 1983. *See Sisk v. Texas Parks & Wildlife Department*, 644 F.2d 1056 (5th Cir.1981).[3]

### VII. Plaintiff's claims are subject to the primary jurisdiction of the Federal Maritime Commission

 Defendants argue that even if Maritrend has properly pled a cause of action under 42 U.S.C. § 1983 for violations of the

---

**3.** Defendants argue that Maritrend, who is not a member of a protected class, cannot bring suit under 42 U.S.C. § 1983 for a violation of the equal protection clause of the Fourteenth Amendment. This argument is without merit. A court may entertain claims under 42 U.S.C.

§ 1983 for violations of the equal protection clause even if a fundamental right is not at issue, and a plaintiff is not a member of a protected class. *Sisk v. Texas Parks & Wildlife Department*, 644 F.2d 1056 (5th Cir.1981).

equal protection clause, its claim of a Fourteenth Amendment violation is merely a "thinly disguised claim" under the Shipping Act of 1916 and the IOCTA, and is therefore subject to the primary jurisdiction of the FMC. Maritrend contends that its claim under 42 U.S.C. § 1983 is not a disguised claim, that the FMC has no jurisdiction to adjudicate its constitutional claim, and that this Court has the required competence to adjudicate the claims and issues before it.

■ The doctrine of primary jurisdiction was developed by the United States Supreme Court in *United States v. Western Pacific R. Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). The doctrine, simply stated, allows courts to defer consideration of issues and causes of action which fall within the special knowledge or expertise of a federal administrative agency until the administrative agency has been afforded an opportunity to act. *United States v. General Dynamics Corp.*, 828 F.2d 1356 (9th Cir.1987). "When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved." *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68, 91 S.Ct. 203, 208, 27 L.Ed.2d 203 (1970). The doctrine of primary jurisdiction does not implicate the jurisdictional power of the federal courts; it is rather a method by which courts structure proceedings to provide for the "orderly and sensible coordination of the work of agencies and courts." *United States v. Bessemer and Lake Erie R. Co.*, 717 F.2d 593, 599 (D.C.Cir.1983) (citing *Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 736 (3rd Cir.1983)). *See also Ayuda, Inc. v. Thornburgh*, 880 F.2d 1325 (D.C.Cir.1989), *vacated on other grounds*, 498 U.S. 1117, 111 S.Ct. 1068, 112 L.Ed.2d 1174 (1991); *REO Indus., Inc. v. Natural Gas Pipeline Co.*, 932 F.2d 447, 456 (5th Cir.1991) (holding that "[t]he doctrine of primary jurisdiction ... is a doctrine of judicial abstention whereby a court which has jurisdiction over a matter, nonetheless defers to an administrative agency for an *initial decision* on ques-

tions of fact or law within the particular competence of the agency").

While it has long been recognized that an "agency has primary jurisdiction to apply the law to the facts on a matter arguably within its statutory authority," *Ayuda, Inc. v. Thornburgh*, 880 F.2d 1325, 1343 (D.C.Cir. 1989), four factors must be present for a court to invoke the doctrine of primary jurisdiction: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." · *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir.1987).

The doctrine of primary jurisdiction has often been invoked in order to give the FMC an opportunity to determine whether provisions of the Shipping Act of 1916 and the IOCTA have been violated and to provide an injured party with a remedy for such violations. *See United States Navigation Co. v. Cunard Steamship Co.*, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932); *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 68, 91 S.Ct. 203, 208, 27 L.Ed.2d 203 (1970); *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission*, 390 U.S. 261, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968); *Federal Maritime Board v. Isbrandtsen Company*, 356 U.S. 481, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958); *Buchanan v. Fowler*, 381 F.2d 7, 8 (5th Cir.1967) (holding that "factual disputes arising under the Shipping Act fall within the primary jurisdiction of the Federal Maritime Commission"); *United States v. ABC Containerline N.V.*, 572 F.Supp. 150, 153, n. 3 (S.D.N.Y.1983) (recognizing "[t]he FMC clearly has jurisdiction to determine the anticompetitive effects of behavior by maritime industries").

Under the facts of the instant case, application of the doctrine of primary jurisdiction is appropriate. First, as discussed above, the claims and issues raised by Maritrend are governed by provisions of the Shipping

Act of 1916 and the IOCTA. Second, both the Shipping Act of 1916 and the IOCTA provide a comprehensive regulatory scheme for the shipping industry under the administration of the FMC. Third, resolution of the claims and issues raised by Maritrend in this suit, especially with regard to the scope of the anti-trust immunity provisions of the Shipping Act of 1916 and the IOCTA, require the expertise of the FMC. Finally, as in the case of *A & E Pacific Construction Company v. Saipan Stevedore Company, Inc.*, 888 F.2d 68, 72 (9th Cir.1989), Maritrend's federal constitutional claim is based on the same facts and theories as a claim brought under both the Shipping Act and the IOCTA. When a claim "both in the nature of the conduct complained of and the relief sought" is one which could have been brought under the Shipping Act or the IOCTA, the claim may first be properly submitted to the FMC. *Id.* at 72, n. 6. Based on the foregoing, this Court should, under the doctrine of primary jurisdiction, afford the Federal Maritime Commission an opportunity to address the claims and issues and claims raised by Maritrend.

Finding that the doctrine of primary jurisdiction should be invoked and the FMC should be allowed an opportunity to act, Defendants' additional claims of immunity, ripeness, and factual exculpability need not be addressed at this time.

## VIII. Abatement is proper

 When the doctrine of primary jurisdiction is invoked, a court may refer the case to an administrative agency and either abate the action and retain jurisdiction or dismiss the action without prejudice. *Reiter v. Cooper*, — U.S. —, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). If there is a chance that the parties would be prejudiced or disadvantaged by a dismissal, the Court should opt for an abatement. *Id.; See also Carnation Co. v. Pacific Westbound Conference*, 383 U.S. 213, 223, 932, 86 S.Ct. 781, 787, 15 L.Ed.2d 709 (1966) (discussing the appropriateness of a dismissal as opposed to a stay). Because the Court cannot predict the time required by the Federal Maritime Commission to address the claims and issues raised by Maritrend, this action should be abated, rather than dismissed, to avoid any potential statute of limitations problems.

Based on the foregoing, it is RECOMMENDED that Defendants' Motion to Abate or Defer (Instrument No. 15–2) be GRANTED; that Defendants' Motion to Stay Discovery (Instrument No. 15–3) be GRANTED and that discovery be stayed during the pendency of the abatement; and that Defendants' Motion to Dismiss (Instrument No. 15–1) be DENIED. It is further RECOMMENDED that the issues and claims presented by Plaintiff Maritrend in this case be REFERRED to the Federal Maritime Commission for a determination on any and all issues within its jurisdiction.

The Clerk shall file this instrument and mail a copy to all counsel and unrepresented parties of record. Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), General Order 80–5, S.D.Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (en banc); *Ware v. King*, 694 F.2d 89 (5th Cir.1984), *cert. denied*, 461 U.S. 930, 103 S.Ct. 2092, 77 L.Ed.2d 302 (1983); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208 and a copy must be delivered to the Chambers of Judge Werlein, Jr., Room 9136 and to the Chambers of Judge Stacy, Room 7525.